UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LISA CHIBBARO, | |
| Plaintiff, | Case No. 3:20-cv-00663 |
| v. | Judge Aleta A. Trauger |
| | Magistrate Judge Alistair E. Newbern |
| TAIWO T. EVERETT et al.,[1] | |
| Defendants. | |

To:     The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This civil rights action brought under 42 U.S.C. § 1983 arises out of pro se and *in forma pauperis* Plaintiff Lisa Chibbaro's incarceration at the Tennessee Prison for Women Annex (TPWA) in Nashville, Tennessee, which is a Tennessee Department of Correction (TDOC) facility. (Doc. No. 21.) Chibbaro alleges that Defendant Nurse Practitioner Taiwo Everett, who worked at TPWA, knowingly prescribed Chibbaro an antibiotic to which she was allergic and then refused to treat her allergic reaction to the drug in violation of Chibbaro's Eighth Amendment right to adequate medical care. (Doc. Nos. 1, 21.) Everett has filed a motion for summary judgment (Doc. No. 45), to which Chibbaro has responded in opposition (Doc. Nos. 59, 60). Everett has filed a reply. (Doc. No. 63.) For the reasons that follow, the Magistrate Judge will recommend that the Court deny Everett's motion for summary judgment.

---

[1]     The parties agree that the correct spelling of Defendant Everett's first name is "Taiwo," not "Tawaio." (Doc. No. 21, 45.)

# I.  Background

## A.  Factual Background[2]

### 1.  Chibbaro's Ear Infection and Treatment

On August 11, 2019, while incarcerated at TPWA, Chibbaro submitted a sick call request

complaining that her "[l]eft ear hurt[ ] really bad[,]" her "throat [was] swollen shut[,]" and it was

---

[2]  The facts in this section are drawn from Everett's statement of undisputed material facts (Doc. No. 47), Chibbaro's response to that statement (Doc. No. 61), grievance records attached to Chibbaro's amended complaint (Doc. No. 21), and the parties' summary judgment exhibits, which include affidavits and medical records from Chibbaro's incarceration filed by both parties (Doc. Nos. 44-1, 45-1–45-3, 51-1, 62-1–62-9, 63-1).

Everett argues in her reply brief that the medical records Chibbaro offers at summary judgment "are unverified and therefore hearsay under Rule 801." (Doc. No. 63, PageID# 1412.) "[T]he 2010 amendments to Rule 56 . . . eliminated the unequivocal requirement that documents submitted in support of [or in opposition to] a summary judgment motion must be authenticated." *Foreword Mag., Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011); *see also Pawlaczyk v. Besser Credit Union*, No. 1:14-CV-10983, 2015 WL 4208649, at *8 (E.D. Mich. Apr. 13, 2015) (collecting authority for the proposition that "the new Rule [56] has jettisoned the authentication requirement"), *report and recommendation adopted*, 2015 WL 4208658 (E.D. Mich. July 10, 2015). The amended version of Rule 56(c)(2) instead provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see Swank v. Hale*, No. 2:12-cv-1031, 2016 WL 1156517, at *2–4 (S.D. Ohio Mar. 24, 2016) ("Rule 56 (as amended) replaces the authentication standard and permits courts to consider unauthenticated materials, while providing an adverse party the opportunity to object to material that the party believes 'cannot be presented in a form that would be admissible in evidence.' (quoting Fed. R. Civ. P. 56(c)(2))). "Significantly, the objection contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Foreword Mag., Inc.*, 2011 WL 5169384, at *2; *see also* 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.91 (3d ed. 2022) ("The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form.").

Everett has not argued that the medical records Chibbaro filed cannot be presented in a form admissible at trial. Nor would such an argument be persuasive, as some of Everett's own excerpts from the same medical records have already been verified (Doc. No. 44-1) and fall within the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6), 901. Everett did not include a verifying affidavit with the supplemental medical record excerpts she filed. (Doc. No. 51-1.) The Court also notes the similarities between the verified medical records filed by Everett (Doc. No. 44-1) and the medical records filed by Chibbaro (Doc. Nos. 62-1, 62-6–62-9). *See Nichols v. Smock*, No. 22-1092, 2022 WL 1553000, at *2 n.2 (3d Cir. May 17, 2022) (holding that district

"hard to breath[e] [and] swallow[.]" (Doc. No. 44-1, PageID# 549; Doc. No. 62-6, PageID# 1078.) The next day, Nurse Cynthia Sullivan evaluated Chibbaro and completed a progress record documenting Chibbaro's symptoms and scheduling her for a follow-up appointment with a medical provider. (Doc. Nos. 44-1, 47, 61, 62-8.) In the "[a]llergies" field of the progress record, Sullivan wrote "NKDA" (Doc. No. 44-1, PageID# 547; Doc. No. 62-8, PageID# 1222), which stands for "No Known Drug Allergies[ ]" (Doc. No. 47, PageID# 616, ¶ 4; Doc. No. 61, PageID# 707, ¶ 4). Prior medical records in Chibbaro's file—including several physician's orders and major problem lists—stated that Chibbaro is allergic to quinolones, a class of antibiotic medications.[3] (Doc. Nos. 62-1, 62-6–62-9.)

Everett examined Chibbaro on August 14, 2019, and diagnosed her with acute otitis externa, also known as swimmer's ear. (Doc. Nos. 44-1, 47, 61, 62-8.) Chibbaro states that, while Everett was taking her vital signs, Everett asked if Chibbaro had any allergies. (Doc. No. 62-1.) Chibbaro told Everett she "was unable to take Quinolones[,]" and Everett "stated that wasn't in [Chibbaro's] chart[.]" (*Id.* at PageID# 730, ¶ 8.) Chibbaro stated that it was. (*Id.*) Everett denies that this conversation took place and instead states that Chibbaro "never informed [her] that

---

court did not "abuse[ ] its discretion by considering unauthenticated [prison] medical records when ruling on [defendant's] motion for summary judgment" because "[t]he medical records were capable of being presented in a form that would be admissible in evidence . . . and the contents, appearance, and substance of the records support that they are what [the plaintiffs] purport them to be" (citing Fed. R. Evid. 901(b)(4))); *Cash v. Swingle*, No. 2:10-cv-1082, 2012 WL 2521816, at *4 (E.D. Cal. June 28, 2012) (overruling defendants' hearsay objection to plaintiff's summary judgment exhibits and finding no "reasonabl[e] . . . dispute[ ] that the evidence offered by plaintiff consists simply of excerpts of his prison medical records, created and maintained by prison officials . . ."). To illustrate the similarities between Chibbaro's and Everett's submissions, this Report and Recommendation includes parallel citations to Chibbaro's medical record exhibits when citing Everett's medical record exhibits.

[3]     Everett concedes in her summary judgment affidavit that "[t]here are inconsistencies in [Chibbaro's] medical records regarding whether she has an actual allergy to Ciprofloxacin or any other quinolones." (Doc. No. 45-1, PageID# 560, ¶ 9.)

[Chibbaro] was allergic to the class of drugs known as 'quinolones' . . . ." (Doc. No. 45-1, PageID# 561, ¶ 12.) Everett states that, "[a]s part of [her] evaluation of [Chibbaro] on August 14, 2019, [she] reviewed Nurse Sullivan's progress note from" two days before and "also saw that [Chibbaro] had received Bactrim, minocycline, and amoxicillin to treat other symptoms." (*Id.* at PageID# 559, ¶ 7.)

Everett prescribed Chibbaro an antibiotic called Ciprofloxacin (Cipro) and Cortisporin Otic ear drops to treat her ear infection; Everett also prescribed her Toradol and Ibuprofen for pain relief. (Doc. Nos. 44-1, 47, 61, 62-8.) Everett's notes from the August 14, 2019 appointment state that she instructed Chibbaro "to refrain from inserting cotton swabs or allowing water inside [her] ear[,]" to administer the ear drops in her left ear while lying down on her right side, and to take all of the prescribed antibiotic "even after feeling well." (Doc. No. 44-1, PageID# 550; Doc. No. 62-8, PageID# 1224.) The notes state that Chibbaro "verbalized [her] understanding." (*Id.*)

On August 16, 2019, the dispensing nurse told Chibbaro that her medication was ready and that she needed to come to the medication line to take it. (Doc. No. 62-1.) When Chibbaro asked what the medication was, the nurse told her it was Cipro. (*Id.*) Chibbaro states in her summary judgment affidavit that she told the dispensing nurse she "'thought Cipro was a Quinolone[,]'" but the nurse "flipped through a book she got out of a desk and then stated, 'No it wasn't – it has no known allergies.'" (*Id.* at PageID# 730–31, ¶ 10.) Chibbaro took the prescribed Cipro and returned to the medication line for two more doses of Cipro the next day. (Doc. No. 62-1.) Chibbaro asserts that, "[b]y mid-day on August 17, 2019, [she] was already feeling lousy" and "experienc[ing] pain in [her] muscles and joints." (*Id.* at PageID# 731, ¶ 12.) Chibbaro then looked up Cipro in a pharmacy reference book in the TPWA library and discovered that it was a quinolone. (Doc. No. 62-1.) Chibbaro showed the book to Sullivan, who was dispensing medication that evening,

and Sullivan "told [Chibbaro] to discontinue the medication and that she would let someone know about the issue." (*Id.* at PageID# 731, ¶ 12.)

Chibbaro states that, two days later on August 19, 2019, she "stopped by med-line to ask [Sullivan] if she had any replacement medication for [her] and [Sullivan] stated she had forgotten all about it." (*Id.* at ¶ 14.) The next morning Chibbaro again "stopped by med-line to remind [Sullivan] to speak to someone about replacing [her] antibiotic and . . . told [Sullivan] [she] needed something for the pain in [her] joints and muscles." (*Id.* at ¶ 15.) That evening, Chibbaro asked Sullivan "if she had replacement medication for [Chibbaro] and she said she did not but then said 'maybe you will be seen tomorrow, I put a note on your chart and gave it to 'Taiwo' [NP Everett]." (*Id.* at ¶ 16 (alteration in original).)

On August 26, 2019, Chibbaro submitted a sick call request and described her problem as: "Severe pain due to reaction from medicine. No one has followed up in the past week since it happened. Pain in joints/tendons." (Doc. No. 44-1, PageID# 551; Doc. No. 62-6, PageID# 1079.) Sullivan saw Chibbaro for a sick call the next day, completed a progress record, and noted Chibbaro's complaints of joint pain and tendon pain. (Doc. Nos. 44-1, 62-8.) In the "[a]llergies" field of the progress record, Sullivan wrote "Quinolones" and wrote elsewhere in the record that "[patient] took Cipro [and] cannot take it due to being allergic to it. Now [has] joint pain/swelling in hands/feet – took Cipro for swimmer's ear[.]" (Doc. No. 44-1, PageID# 543; Doc. No. 62-8, PageID# 1225.) Sullivan referred Chibbaro to Everett for further evaluation. (Doc. No. 44-1.)

Chibbaro had an appointment with Everett on September 4, 2019. (Doc. Nos. 44-1, 45-1, 47, 61, 62-1, 62-8.) Chibbaro states that Nurse Flores took her vital signs and that, "while [she] was sitting with him[,] [she] noticed 'NKDA' was written on the paperwork." (Doc. No. 62-1, PageID# 732, ¶ 22.) Chibbaro states that she "asked [Flores] to change that because [she] did in

fact have an allergy to Quinolones[,]" but Flores told Chibbaro "he would not" and said she needed to tell Everett to make the change. (*Id.*) While she was waiting to see Everett, Chibbaro asked CCO Forest what she could do to see a different medical care provider; Forest told her "to write [Assistant Warden for Treatment] Williams." (*Id.*)

Chibbaro states that, when Everett arrived, Chibbaro told her that she was experiencing joint pain in "all of [her] joints[,]" and Everett "stated, 'they can't all be hurting.'" (*Id.*) Chibbaro repeated that all her joints hurt and said it was "because [Everett] prescribed [her] medicine [she] could not take." (*Id.* at PageID# 732–33, ¶ 22.) Chibbaro states that Everett "started to raise her voice to [Chibbaro] and told [her] that, 'all of [her] joints and tendons could not be hurting and it was not because of [Everett].'" (*Id.* at PageID# 733, ¶ 22.) According to Chibbaro, Everett "kept hollering and at one point while other staff members and inmates were in the hall started waving [Chibbaro's] chart and yelling, 'she told me she was allergic to penicillin' and that [Chibbaro] had never told her about the other allergy." (*Id.*) Chibbaro states that Everett "got even louder" after Chibbaro told her she "would be filing a Board Complaint on her and that [she] had already filed a grievance about it." (*Id.*) Chibbaro states that "Unit Manager Tracy Carswell came down the hall and told . . . Everett three (3) separate times she could not be yelling [Chibbaro's] medical business out in the hall." (*Id.*) Chibbaro states that "Carswell told [Chibbaro] [she] could not be . . . hollering at the provider and [Carswell] walked [Chibbaro] down to her office[,]" where Carswell called Assistant Warden for Treatment Williams and left a message. (*Id.*) Chibbaro states that Forest explained to Carswell that, before the appointment started, Chibbaro had expressed "concerns about seeing [Everett] again but that [she] needed to be seen by someone." (*Id.*) Chibbaro states that she was not disciplined for this incident. (Doc. No. 62-1.)

Everett wrote the following notes in a progress record regarding Chibbaro's September 4, 2019 appointment:

> Patient scheduled for evaluation of joint and tendon pain. States (yelling) "You prescribed me Cipro and now my joints are hurting. I told you I was allergic to quinolones." Provider corrected patient that you said you can't take penicillin and I gave you Cipro after looking back to pages of your chart you have No Known Drug Allergy. I just didn't put you on Amoxicillin because it's penicillin. But record shows you had amoxicillin few months back. But I respected you telling me you don't take penicillin. Patient started insulting provider that the board of nursing is going to take your license my attorney is going to put you in jail, etc. The unit manager came in and said why are you yelling at the provider? I can't have you do that. Patient was walked away. Pt requested pain medication for joint pain supposedly caused by Cipro. Allergy was then changed to Quinolones.

(Doc. No. 44-1, PageID# 540; Doc. No. 62-8, PageID# 1239.)

Everett states that, "[a]fter this visit, [she] was concerned for [her] safety and asked someone else to evaluate [Chibbaro]." (Doc. No. 45-1, PageID# 561, ¶ 11.) Everett also states that she "never refused to provide medical care to [Chibbaro]." (*Id.* at ¶ 17.) Chibbaro denies telling "Everett or any other medical provider . . . that [she] was allergic to or had an allergy to Penicillin . . . ." (Doc. No. 62-1, PageID# 734, ¶ 24.) She also disputes that she threatened to have Everett put in jail. (Doc. No. 62-1.)

Chibbaro submitted a sick call request later in the day on September 4, 2019, stating: "Need to see someone – [Everett] refused to treat me. Severe pain to joints [and] tendons b/c she prescribed something I can't take." (Doc. No. 62-6, PageID# 1080.) Chibbaro states that, two days later, she spoke to the dispensing nurse on duty who then saw her for a sick call. (Doc. No. 62-1.) Chibbaro's medical records reflect that the nurse noted her complaints of pain caused by taking Cipro and discharged Chibbaro to her unit. (Doc. No. 62-8.) Chibbaro states that, the next day, her "hands were so swollen they had doubled in size" and she "showed them to [another] dispensing nurse . . . [who] had [Chibbaro] fill out another sick call form" and said "she would try to talk to someone because [Chibbaro] needed to see a doctor." (Doc. No. 62-1, PageID# 734, ¶ 26.)

Chibbaro states that she "placed an inmate inquiry under CCO Forest's door" on September 10, 2019, "because [she] still had not received any treatment . . . ." (*Id.* at ¶ 27.)

Chibbaro states that, on September 17, 2019, Officer Moss, who oversaw the license plate plant at TPWA where Chibbaro worked, told Chibbaro that she "ha[d] an appointment the next day at 12:00 with . . . Everett." (*Id.* at PageID# 735, ¶ 30.) Chibbaro states she "was not picked up for [her] medical appointment" on September 18, 2019, and that, after work, Officer Johnson told her it was because Everett "told Nurse Flores . . . she wasn't seeing [Chibbaro]." (*Id.* at ¶ 31.) Sullivan asked Chibbaro "to sign a refusal of treatment for September 18, 2019[,]" but Chibbaro declined and told Sullivan she "had not refused treatment, treatment was refused to [her]." (*Id.* at ¶ 32.)

On September 20, 2019, Chibbaro had an appointment with TPWA Medical Director Dr. Alacia Bigham. (Doc. Nos. 62-1, 62-8.) Chibbaro states that Bigham "thought she was seeing [Chibbaro] for labs, [and] had no knowledge that [Chibbaro] had been refused treatment for [her] pain and suffering taking the Cipro was causing." (Doc. No. 62-1, PageID# 735, ¶ 33.) Chibbaro states that Bigham "discuss[ed] the issues with [her] and treated [her] for [the] same." (*Id.*) Bigham's notes in Chibbaro's medical records state that Chibbaro "had a Quinolone reaction" after "taking 4 Cipro tabs[,]" "still ha[d] muscle pain [and] weakness[,]" and was "[t]earful [with] [her] descriptions" of her symptoms. (Doc. No. 62-8, PageID# 1235.) Bigham prescribed Chibbaro Toradol and Prednisone and noted that Chibbaro should have a follow-up appointment in one month to address "muscle pain" and other issues.[4] (*Id.* at PageID# 1228.) The letters "NKDA" are

---

[4] Toradol is the brand name of Ketorolac, which is "used to relieve moderately severe pain, usually pain that occurs after an operation or other painful procedure. It belongs to the group of medicines called nonsteroidal anti-inflammatory drugs (NSAIDs)." Mayo Clinic, *Ketorolac (Oral Route, Injection Route)*, https://www.mayoclinic.org/drugs-supplements/ketorolac-oral-route-injection-route/description/drg-20066882 (last visited August 21, 2022).

crossed out and replaced with the word "Quinolones" in the "Drug Allergies" field at the top left corner of the physician's orders form on which Bigham wrote the prescriptions for Toradol and Prednisone. (*Id.*) The change is dated "9/4/19" and is initialed "TE[.]" (*Id.*)

## 2. Chibbaro's Grievance and Appeals

Chibbaro submitted a grievance on August 17, 2019, complaining that she "was prescribed medication that [she] ha[d] a known allergy to[ ]." (Doc. No. 21, PageID# 156.) Chibbaro's grievance detailed that she saw Everett for "a sick call for an ear ache" on Wednesday, August 14, 2019; Everett "asked if [she] had any allergies to any medications[;]" Chibbaro told Everett that she could not "take Quinolones[;]" and Everett "prescribed Cipro." (*Id.* at PageID# 157.) Chibbaro stated in the grievance that she took her first dose of Cipro after the dispensing nurse told her it was safe to do so. (*Id.*) Chibbaro further stated that, "[o]n Saturday [she] felt extremely lousy and noticed [her] tendons and joints were really hurting like they did the last time [she] was hospitalized after taking a Quinolone so [she] looked it up" and discovered that Cipro "is a Quinolone." (*Id.*) Chibbaro's grievance asked for "[p]roper medical care" (*id.* at PageID# 156) and stated that "[a]nother grievance w[ould] be coming up that medication [was] not immediately replaced by an antibiotic [she] c[ould] actually take" (*id.* at PageID# 157).

On August 21, 2019, TPWA Grievance Chairperson Sergeant Heflin signed an inappropriate grievance notification form regarding Chibbaro's grievance. (Doc. No. 21.) Heflin instructed Chibbaro that she "need[ed] to include the dates and times that the medication was given to [her], and return this grievance back to the grievance office, with [her] signature on the bottom of this inappropriate paperwork." (*Id.* at PageID# 159.) Chibbaro signed the inappropriate grievance notification form on August 25, 2019, and attached a page explaining that she "was administered [her] [first] dose on Friday, August 16th at approximately 4:30pm–5:00pm" and received her second and third doses "on Saturday, August 17th . . . at approximately 6:00am and

. . . 4:30–5:00pm." (*Id.* at PageID# 160.) Chibbaro complained that "NO ONE ha[d] followed up since" despite Sullivan's promise that "she would let the doctor/FNP know" Chibbaro could not take the Cipro anymore. (*Id.*)

On September 10, 2019, the supervisor assigned to review Chibbaro's grievance wrote: "After a thorough review of your medical file, I have determined that your complaint has already been identified and addressed by the onsite provider. This was conducted on 8.20.19[.]" (*Id.* at PageID# 162.) In the field of the inmate grievance response form labeled "Chairperson's Response and Reason(s)[,]" it states "Policy 501.01(H)(8); No hearing; deemed inappropriate; a medical diagnosis by professionals is inappropriate"; this field is not signed or dated. (*Id.* at PageID# 156.) Chibbaro appealed this response on September 16, 2019. (Doc. Nos. 21, 62-1.)

On September 23, 2019, the TPWA Inmate Grievance Committee Chairman signed a response stating "[n]o hearing; deemed inappropriate; a medical diagnosis by professionals is inappropriate." (Doc. No. 21, PageID# 163.) On October 15, 2019, TPWA Warden Gloria Gross checked a box indicating that she agreed with the proposed response.[5] (*Id.*) Chibbaro appealed this response on October 20, 2019. (*Id.*) On October 24, 2019, the TDOC Assistant Commissioner of Prisons signed a response stating that "[t]he Director of Health Services has reviewed the grievance" and checked a box marked "Concur with Supervisor[.]" (*Id.* at PageID# 169.)

Chibbaro asserts that she "was unable to file a grievance regarding the lack of treatment on September 4, 2019[,] because [she] had a pending grievance already and" TDOC grievance policies prohibit "submit[ting] more than one grievance arising out of the same or similar incident and" also prohibit "hav[ing] more than one grievance pending at the first level of review." (Doc.

---

[5] Chibbaro filed two status inquiries while waiting for Gross's response, the first on October 1, 2019, and the second on October 16, 2019. (Doc. No. 21.)

No. 62-1, PageID# 733–34, ¶ 23.) Chibbaro states that, by the time she "signed the Level II appeal on September 16, 2019," her time to file a grievance regarding Everett's actions on September 4, 2019, had expired because TDOC grievance policies also require grievances "to be filed within seven (7) calendar days of the occurrence giving rise to the grievance." (*Id.* at PageID# 734, ¶ 23.)

### B.    Procedural History

Chibbaro initiated this action in July 2020 by filing a complaint under 42 U.S.C. § 1983 alleging deliberate indifference to her serious medical needs in violation of the Eighth Amendment against Everett and several other defendants. (Doc. No. 1.) The Court granted Chibbaro's application for leave to proceed *in forma pauperis* and screened her original complaint under 28 U.S.C. § 1915(e)(2)(B). (Doc. No. 6.) The Court found that Chibbaro's complaint stated a colorable Eighth Amendment deliberate indifference claim against Everett in her individual capacity but dismissed Chibbaro's claims against Everett in her official capacity and all other claims and defendants named in the original complaint. (*Id.*)

Everett moved to dismiss Chibbaro's original complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Chibbaro had failed to adequately plead an Eighth Amendment deliberate indifference claim against her. (Doc. No. 11.) Chibbaro responded by filing a motion for leave to amend her complaint as a matter of course under Rule 15(a)(1)(B) and attached a proposed amended complaint to her motion. (Doc. Nos. 16, 16-1.) Everett did not oppose Chibbaro's motion for leave to amend, and the Court granted the motion as unopposed. (Doc. No. 20.) Chibbaro's amended complaint, which is the operative pleading in this action, alleges that Everett was deliberately indifferent to Chibbaro's serious medical needs by prescribing Chibbaro Cipro, even though Everett knew Chibbaro was allergic to quinolones, and refusing to treat Chibbaro for the severe pain that the Cipro caused. (Doc. No. 21.) Chibbaro seeks monetary

damages and an injunction requiring all medical providers in TDOC facilities to be licensed by the Tennessee Board of Health. (*Id.*)

Everett moved to dismiss Chibbaro's amended complaint under Rule 12(b)(6), again arguing that Chibbaro had not sufficiently alleged that she had a serious medical need and that Everett knew of and disregarded a substantial risk of harm to Chibbaro. (Doc. Nos. 17, 18.) Everett further argued that Chibbaro's claim was subject to the Tennessee Health Care Liability Act (THCLA), which requires plaintiffs bringing health-care-liability claims under state law to provide pre-suit notice and file a certificate of good faith. (Doc. No. 18.) Chibbaro responded in opposition to Everett's motion, arguing that she had sufficiently alleged each element of her deliberate indifference claim and that the Court should not construe her § 1983 claim as a state-law claim subject to THCLA notice requirements. (Doc. Nos. 26, 27.) Everett did not file an optional reply.

The Magistrate Judge recommended that the Court find moot Everett's motion to dismiss the original complaint and deny Everett's motion to dismiss the amended complaint. (Doc. No. 30.) Everett did not file objections to the Magistrate Judge's report and recommendation, and the Court accepted it, denying as moot Everett's motion to dismiss the original complaint and denying Everett's motion to dismiss the amended complaint for the reasons stated in the report and recommendation. (Doc. No. 32.)

Everett now moves for summary judgment. (Doc. No. 45.) She argues that Chibbaro's claims challenge the adequacy of medical treatment she received at TPWA—specifically, Everett's prescription of Cipro to Chibbaro on August 14, 2019, and Everett's alleged refusal to treat Chibbaro for joint pain and swelling on September 4 and 18, 2019. (Doc. No. 46.) Everett further argues that she is entitled to summary judgment on Chibbaro's claims that Everett refused to treat her because Chibbaro failed to exhaust her administrative remedies regarding those claims.

(*Id.*) Everett does not dispute that Chibbaro administratively exhausted her claim based on being prescribed Cipro, but argues that she is entitled to summary judgment on this claim because Chibbaro cannot show, based on record evidence, that Chibbaro had a sufficiently serious medical need or that Everett had a sufficiently culpable state of mind in prescribing Cipro to prove an Eighth Amendment deliberate indifference claim. (*Id.*) Chibbaro has responded in opposition to Everett's motion, arguing that she exhausted the administrative remedies provided by TDOC grievance policies and that the record evidence creates genuine issues of material fact regarding whether Chibbaro had a sufficiently serious medical need and Everett had a sufficiently culpable state of mind. (Doc. Nos. 59, 60.) Everett's reply does not address Chibbaro's exhaustion arguments but reiterates Everett's arguments that Chibbaro cannot show a sufficiently serious medical need or the required state of mind to prove her deliberate indifference claim based on Everett's prescription of Cipro. (Doc. No. 63.)

## II.      Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

III.     **Analysis**

A.     **Administrative Exhaustion**

The Prison Litigation Reform Act (PLRA) requires plaintiffs to exhaust all available administrative remedies, including prison grievance procedures, before filing an action addressing the conditions of their confinement. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524

(2002); *Himmelreich v. Fed. Bureau of Prison*s, 766 F.3d 576, 577 (6th Cir. 2014), *aff'd sub nom. Simmons v. Himmelreich* 578 U.S. 621 (2016). The purpose of this exhaustion requirement is to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525; *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." (quoting *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006))). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) ("A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution.").

"[T]he PLRA's exhaustion requirement is a strict rule, but there are a few exceptions." *Does 8–10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019). The PLRA conditions the exhaustion requirement "'on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.'" *Id.* (alteration in original) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). An administrative remedy is unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2) "an administrative scheme . . . [is] so opaque that it becomes,

practically speaking, incapable of use[;]" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. The Sixth Circuit requires an incarcerated person to make "'some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011) (quoting *Braswell v. Corr. Corp. of Am.*, No. 3:08-0691, 2009 WL 2447614, at *7 (M.D. Tenn. Aug. 10, 2009), *rev'd on other grounds*, 419 F. App'x 622 (6th Cir. 2011)). If the record shows such effort, courts will assess "whether an inmate's efforts to exhaust were sufficient under the circumstances[.]" *Id.* at 224.

Failure to exhaust under the PLRA is an affirmative defense for which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (first quoting *Jones*, 549 U.S. at 216, and then quoting *Napier*, 636 F.3d at 225). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion.'" *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455–56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). If defendants meet this burden, plaintiffs must "present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 249).

The summary judgment record in this action contains a copy of TDOC's administrative policies and procedures concerning inmate grievances, which establish a three-level process of

review. (Doc. No. 45-3.) At the first level (Level I), an incarcerated person must file a grievance "utilizing [TDOC form] CR-1394 within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance." (*Id.* at PageID# 582, ¶ VI.C.1.) "Grievance forms which are improperly completed or contain insufficient information for processing shall be returned to the inmate with instructions as to proper completion." (*Id.* at PageID# 583, ¶ VI.C.1.) After the institution's grievance chairperson receives a grievance, a supervisor prepares and signs a response to the grievance and returns it to the chairperson. (Doc. No. 45-3.) The chairperson reviews the supervisor's response, writes his or her own response on the CR-1394 form, and returns it to the grievant. (*Id.*) The grievant may appeal to the second level (Level II) "[w]ithin five calendar days of being notified of the Level I response[.]" (*Id.* at PageID# 583, ¶ VI.C.2.) At the second level, the institution's grievance committee holds a hearing, drafts a proposed response, and forwards that response to the institution's warden. (Doc. No. 45-3.) The warden makes a decision and forwards his or her response back to the grievance chairperson, who "will allow the grievant to review the grievance materials and responses." (*Id.* at PageID# 583, ¶ VI.C.2.) The "grievant may appeal the Level II response within five calendar days of receipt of that response." (*Id.* at ¶ VI.C.3.) At the third level (Level III), TDOC's Assistant Commissioner of Prisons or his or her designee reviews the grievance and prepares a response which "is final and not subject to appeal." (*Id.*)

Everett argues that Chibbaro failed to follow this process for her claims that Everett refused to treat her on September 4 and 18, 2019, and therefore failed to administratively exhaust these claims. (Doc. No. 46.) Specifically, Everett argues that the only grievance in the summary judgment record is Chibbaro's August 17, 2019 grievance concerning Everett's prescription of Cipro, which predates the alleged refusals to treat by more than two weeks. (*Id.*) Everett asserts that Chibbaro failed to comply with TDOC grievance policies and procedures because she "[n]ever

amended her initial [i]nmate [g]rievance to include allegations relating to . . . Everett's refusal to

provide medical care on September 4, 2019 and September 18, 2019[,]" despite stating in her initial

grievance "that she was going to file a separate grievance based on the failure to be prescribed an

antibiotic she could actually take[.]" (*Id.* at PageID# 605)

Chibbaro responds that she "was unable to file any subsequent grievances because" TDOC

policies provide that "[i]nmates shall not be permitted to submit more than one grievance arising

out of the same or similar incident[s]" and "[i]nmates shall not be permitted to have more than one

grievance pending at the first level." (Doc. No. 60, PageID# 694 (quoting Doc. No. 45-3,

PageID# 585, ¶¶ VI.I.1, VI.I.2).) The Court construes Chibbaro's argument as an argument that

TPWA's grievance procedure was unavailable to her to separately grieve Everett's alleged refusal

to treat her Cipro reaction on September 4 and 18, 2019. Everett has not responded to Chibbaro's

exhaustion arguments.

There is a genuine issue of material fact regarding whether the grievance process was

available to Chibbaro to separately grieve Everett's alleged refusal to treat her reaction to Cipro

on September 4 and 18, 2019. Everett argues that Chibbaro should have amended her initial

grievance to include these claims, but TDOC's grievance policies and procedures do not appear to

provide a mechanism for amending grievances. Rather, as Chibbaro points out, the policies and

procedures prohibit grievants from having more than one grievance pending at Level I and from

submitting more than one grievance arising out of the same or a similar incident. (Doc. No. 45-3.)

The record evidence, construed in the light most favorable to Chibbaro, shows a question of fact

as to whether Chibbaro could have filed a new grievance regarding Everett's alleged refusal to

treat her on September 4, 2019, within seven days of that incident, as TDOC grievance policies

require, because her August 17, 2019 grievance remained pending at Level I until September 16,

2019. (Doc. Nos. 21, 62-1.) Chibbaro also identifies a question of fact regarding whether Everett's alleged second refusal to treat Chibbaro's Cipro reaction on September 18, 2019, is sufficiently similar to the incident underlying Everett's August 17, 2019 grievance—Everett's prescription of Cipro—such that TDOC grievance policies prohibited Chibbaro from filing another grievance about it.

Accordingly, based on the record evidence and Everett's failure to respond to Chibbaro's arguments that the grievance process was unavailable to her to grieve Everett's refusal to treat her Cipro reaction, the Court finds that Everett has not carried her burden to "'establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion.'" *Surles*, 678 F.3d at 456 (quoting *Risher*, 639 F.3d at 240). Everett is therefore not entitled to summary judgment on exhaustion grounds.

### B.     Chibbaro's Eighth Amendment Deliberate Indifference Claim

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)).

Chibbaro alleges that Everett violated her Eighth Amendment right to adequate medical care while incarcerated. Everett does not dispute that she is a state actor for purposes of liability under § 1983 or that she acted under color of law in performing the traditional state function of providing medical care to people incarcerated in a state prison. She is therefore subject to suit under 42 U.S.C. § 1983. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 597 (6th Cir. 2014). The only

remaining question at summary judgment is whether there is a genuine issue of material fact that Everett deprived Chibbaro of her Eighth Amendment rights.

The Supreme Court established in *Estelle v. Gamble*, 429 U.S. 97 (1976), that the Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle*, 429 U.S. at 104). A deliberate indifference claim against a prison official has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore*, 390 F.3d at 895. The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quoting *Blackmore*, 390 F.3d at 897). The subjective component requires a plaintiff to show that the actor had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This showing "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Chibbaro claims that Everett acted with deliberate indifference to her serious medical needs by prescribing her a medication to which she had a known allergy and refusing to treat her subsequent reaction to that medication. (Doc. No. 21.) This is not a novel factual setting for a deliberate indifference claim. In *Estelle v. Gamble*, the Supreme Court recognized that deliberate indifference under the Eighth Amendment can be "manifested by prison doctors in their responses to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). In reaching that holding, the Supreme Court cited *Thomas v. Pate*, a case from the Seventh Circuit that is factually similar to this one, as providing an example of actionable deliberate indifference by prison doctors. *Estelle*, 429 U.S. at 104 n.10 (citing *Thomas*, 493 F.2d 151, 158 (7th Cir. 1974), *vacated and remanded on other grounds sub nom. Cannon v. Thomas*, 419 U.S. 813 (1974)). In that case, Thomas complained about medical treatment he received "for an ear wound" while incarcerated:

> [Thomas] allege[d] that although his medical record reveal[ed] that he [was] allergic to penicillin and although he brought this information to the attention of the medical staff, the inmate nurse gave him a shot of penicillin. He further allege[d] that when he subsequently had an allergic reaction to the penicillin, the prison doctor, without examining him, concluded that no further treatment was needed.

*Thomas*, 493 F.2d at 158. The district court dismissed Thomas's deliberate indifference claim for failure to state a claim on which relief could be granted. *Id.* at 157. The Seventh Circuit reversed, holding that

> allegations concerning the administration of penicillin despite [Thomas's] known allergy to that drug and [other] allegations describing intentional delay in removing sutures while he was confined in unsanitary environs suffice[d] to state claims for relief for intentional mistreatment likely to aggravate his condition.

*Id.* at 158.

The Supreme Court cited *Thomas* in *Estelle* for the proposition that allegations that prison medical personnel "inject[ed] . . . penicillin with knowledge that [the] prisoner was allergic, and refus[ed] . . . to treat [the] allergic reaction[,]" if proven, "constitute[ ] the 'unnecessary and wanton infliction of pain[ ]' proscribed by the Eighth Amendment."[6] *Estelle*, 429 U.S. at 104 & n.10 (first citing *Thomas*, 493 F.2d at 158; and then quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). A more recent example from the Sixth Circuit is found in *Spann v. Hannah*, No. 20-3027, 2020 WL 8020457, at *2 (6th Cir. Sept. 10, 2020). In that case, the Sixth Circuit held that a plaintiff's allegations that the defendant prison medical providers knew that he was allergic to certain types of eye medication but prescribed that medication to treat his glaucoma, if proven, would demonstrate deliberate indifference to the plaintiff's serious medical needs. *Id.* These cases establish that a prison medical provider's prescription of a known allergen to an incarcerated patient and failure to treat a resulting allergic reaction can constitute deliberate indifference to serious medical needs in violation of the Eighth Amendment.[7] *See Estelle* 429 U.S. at 104 n.10 (citing *Thomas*, 493 F.2d at 158); *Thomas*, 493 F.2d at 158; *Spann*, 2020 WL 8020457, at *2. Construing the record evidence in the light most favorable to Chibbaro, there are genuine issues

---

[6]    *See also Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 552–53 (6th Cir. 2014) (explaining that, "[i]n *Estelle*, the Court offered four examples of [deliberate indifference] violation[s]: a doctor choosing the 'easier and less efficacious treatment;' an official injecting a drug knowing that the prisoner was allegeric [sic] to it and a doctor's subsequent refusal to treat the allergic reaction; a paramedic's refusal to provide treatment; and a prison doctor's refusal to follow a surgeon's express postoperative instructions." (quoting *Estelle*, 429 U.S. at 104 n.10)).

[7]    In screening Chibbaro's original complaint, the Court suggested that Chibbaro's allegations that Everett prescribed her Cipro after she reported her quinolone allergy were "more in line with negligence, rather than nefarious intent, on Everett's part, in initially prescribing this antibiotic." (Doc. No. 6, PageID# 55.) The more fulsome record provided by the amended complaint and at summary judgment demonstrates that Chibbaro's allegations are in line with those found to support Eighth Amendment deliberate indifference claims in *Estelle*, *Thomas*, and *Spann*.

of material fact regarding whether Everett engaged in this type of deliberate indifference in her treatment of Chibbaro.

### 1.    Chibbaro's Medical Needs

First, there is a genuine issue of material fact as to whether Chibbaro's medical needs were sufficiently serious to satisfy the objective component of an Eighth Amendment claim. Again, "a medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond*, 885 F.3d at 938 (quoting *Blackmore*, 390 F.3d at 897). Chibbaro argues that the objective component of her claim is "supported by a well-documented 'allergy' to [q]uinolones which was ignored by [Everett] when she prescribed Cipro[.]" (Doc. No. 60, PageID# 700.) Chibbaro states that taking the prescribed Cipro caused "a serious medical need for treatment recognized by Dr. Alacia Bi[ ]gham on September 20, 2019[,] mandating treatment which included an injection of painkilling drug Toradol, a tapered do[se] of Prednisone, and future orders to follow up within a month for muscle pain[,]" as well as "medical treatment for pain and suffering [Chibbaro] continuously has received since August 14, 2019[.]" (*Id.*)

Everett frames Chibbaro's claim differently. Everett states that Chibbaro "alleges [ ] Everett's medical treatment failed to adequately treat her left ear pain by providing her a medication to which she was allegedly 'allergic' to [sic], specifically a 'quinolone' named Ciprofloxacin and that [ ] Everett then refused to treat her pain that was caused by an alleged 'allergy.'" (Doc. No. 46, PageID# 606.) Construing Chibbaro's claim in this way—as one challenging "the adequacy of treatment [Chibbaro] actually received for her left ear[ ] pain and the adequacy of the follow up care"—Everett argues that its objective component must be supported "by verified medical evidence [showing] that [ ] Everett's actions caused a detrimental effect to [Chibbaro]" and that Chibbaro has not offered such evidence at summary judgment. (*Id.*)

23

"[T]he 'verifying medical evidence' requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care[,]" including "where the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious." *Blackmore*, 390 F.3d at 898. This includes cases in which the plaintiff claims injury resulting from a delay in receiving adequate medical treatment. *Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001) (adopting rule "that '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed'" (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002))). In such cases, medical proof is necessary to demonstrate the seriousness of the injury. *Id.* Verifying medical evidence is *not* required to support a claim based on a medical need that "'has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).

Everett cites three cases to support her argument that the verifying medical evidence standard applies to Chibbaro's claims—*Santiago v. Ringle*, 734 F.3d 585 (6th Cir. 2015), *Blosser v. Gilbert*, 422 F. App'x 453 (6th Cir. 2011), and *Anthony v. Swanson*, 701 F. App'x 460 (6th Cir. 2017). In *Santiago*, *Blosser*, and *Anthony*, the Sixth Circuit held that the gravamen of each plaintiff's claim was the sufficiency of the medical treatment he received for a particular injury. *See Santiago*, 734 F.3d at 591 (holding that incarcerated plaintiff diagnosed with skin inflammation disorder and severe joint-pain condition who received some treatment but

experienced delay in receiving all of the treatments prescribed by a specialist "dispute[d] the adequacy of the treatment he received"); *Blosser*, 422 F. App'x at 460–61 (holding that plaintiff with torn biceps tendon who "was regularly examined by the medical staff at the prison and received his pain medication, monitoring, and care" but "was not sent to [an orthopedic] specialist right away" alleged a claim "that the prison failed to treat [his] condition *adequately*"); *Anthony*, 701 F. App'x at 461, 464 (holding that plaintiff with severe radiation poisoning who wanted colostomy surgery that private doctors had recommended "as a last resort" and who received more "conservative treatment options" from defendant prison medical provider challenged "the sufficiency of his treatment").[8] The equivalent claim in this case would be that the prescribed Cipro was not an adequate treatment for Chibbaro's swimmer's ear, or that adequate treatment of Chibbaro's swimmer's ear was unduly delayed.

But Chibbaro's claim as she alleges it is that Everett prescribed Cipro to treat her swimmer's ear knowing that she was allergic to it, that she suffered an allergic reaction, and that Everett refused to treat her for that reaction, which was later diagnosed and treated by Bigham. (Doc. No. 21.) Chibbaro thus argues that her medical need is sufficiently serious because it "'has been diagnosed by a physician as mandating treatment . . . .'" *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault*, 923 F.2d at 208). The verifying medical evidence requirement does not apply.[9]  Even

---

[8]     Additional cases that Everett cites in her reply brief (Doc. No. 63) also address the adequacy of treatment. *See King v. Alexander*, 574 F. App'x 603, 606 (6th Cir. 2014) (applying verifying medical evidence requirement to plaintiff's claim "that the jail's medical staff treated her infection differently from the doctors who oversaw her initial amputation"); *Olmstead v. Fentress Cnty.*, No. 2:16-cv-00046, 2019 WL 1556657, at *7 (M.D. Tenn. Apr. 10, 2019) (applying verifying medical evidence requirement to claim by plaintiff with hypertension that defendant prison medical personnel's inadequate treatment of his high blood pressure resulted in vision loss).

[9]     Everett argues that "testimony about the 'applicable or appropriate medical standard of care would require the "scientific, technical, or other specialized knowledge" of a qualified expert'" and that "expert testimony is required to establish causation" in a deliberate indifference case. (Doc. No. 46, PageID# 611 (quoting *Tankesly v. Orton*, No. 3:14 C 911, 2018 WL 4953231, at *5

if it did, Chibbaro has provided medical evidence to support her claim at summary judgment. Specifically, Chibbaro offers medical records to demonstrate her quinolone allergy, Everett's prescription of Cipro, and the treatment she received for her allergic reaction, including Bigham's prescription of steroids and painkillers on September 20, 2019.[10] (Doc. No. 62-8.)

---

(M.D. Tenn. Oct. 11, 2018).) The case Everett cites in support of this argument, *Tankesly v. Orton*, addressed motions in limine regarding expert testimony at trial and does not stand for the proposition that expert proof must be provided at summary judgment. 2018 WL 4953231, at *4–5.

Everett also argues that, "[u]nder Tennessee law, an [a]ffidavit of a qualified Defendant[ ] shifts the burden to the Plaintiff to establish by expert proof the elements of their claim." (Doc. No. 46, PageID# 612 (citing *Kenyon v. Handal*, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003)).) *Kenyon* addressed a medical malpractice claim brought under state law. 122 S.W.3d at 748. Everett has not addressed the application of state-law evidentiary standards for medical malpractice claims to a deliberate indifference claim brought under 42 U.S.C. § 1983.

[10]    Everett argues in her reply brief that Chibbaro's "medical records alone are insufficient to constitute verifying medical evidence of a serious medical need." (Doc. No. 63, PageID# 1411.) Everett cites *Calhoun v. Baldwin*, No. 2:18-cv-426, 2020 WL 4015106 (S.D. Ohio July 16, 2020), and *Poindexter v. Boyd*, No. 5:10-CV-32, 2011 WL 5008351 (W.D. Ky. Oct. 20, 2011), in support of this argument, but both cases are distinguishable.

In *Calhoun*, the plaintiff alleged that he was HIV positive and suffered from a lung condition called histoplasmosis and that the defendant jail medical personnel violated his Eighth Amendment rights by delaying his receipt of prescription medication for approximately two weeks after his arrest. 2020 WL 4015106 at *1–2. The court found that the verifying medical evidence requirement applied to the plaintiff's claim, that the defendants had presented expert testimony at summary judgment that the plaintiff's "medical condition did not deteriorate after his . . . incarceration[,]" and that the record evidence did not support a finding that the "two medical records" the plaintiff presented showing his viral load levels from blood tests run before and after his incarceration were "indicative of a serious medical injury." *Id.* at *4. The court found that "[o]nly a medical expert, not this Court, can confirm whether Plaintiff's overall health declined as a result of a brief, one-time fluctuation in his viral load levels and whether that deterioration was caused by missing his medication for roughly two weeks while in custody." *Id.* at *5. *Calhoun* does not support a finding that a plaintiff's medical records can never satisfy the verifying medical evidence requirement. Rather, the court in that case explained that the two medical records the plaintiff submitted were insufficient to satisfy the requirement in that case. *Id.* at *4–5.

In *Poindexter*, the plaintiff alleged that he injured his Achilles tendon while incarcerated and that the defendant prison medical personnel failed to adequately treat his injury. 2011 WL 5008351, at *1–3. The court found that the verifying medical evidence requirement applied, that record evidence showed "that Plaintiff had full range of motion at the conclusion of his treatment

26

Everett next argues that "[t]here is no evidence in the record establishing [Chibbaro] is actually allergic to" Cipro (Doc. No. 46, PageID# 607).[11] In response, Chibbaro offers TDOC health summary transfer paperwork provided to TPWA by the institution where Chibbaro was previously incarcerated stating that Chibbaro is allergic to quinolones. (Doc. No. 62-8.) Records produced by Chibbaro also show that TPWA medical personnel repeatedly noted that she had a quinolone allergy. (Doc. Nos. 62-1, 62-6–62-9.) Everett's own notes in Chibbaro's medical chart reflect that she "changed" Chibbaro's known "allergy" "to Quinolones" following Chibbaro's September 4, 2019 appointment. (Doc. No. 44-1, PageID# 540; Doc. No. 62-8, PageID# 1239.) The records further show that, on the same day, someone with the initials "T.E." changed the drug allergies field of a "physician's orders" form in Chibbaro's record to reflect that Chibbaro is allergic to quinolones. (Doc. No. 62-8, PageID# 1228.) The medical records from Chibbaro's September 20, 2019 medical appointment at TPWA show that Bigham determined Chibbaro "had a Quinolone reaction" after "taking 4 Cipro tabs[,]" prescribed Prednisone and Toradol to treat that reaction, and told Chibbaro to follow up in one month for her "muscle pain" and other issues. (Doc. No. 62-8, PageID# 1228, 1235.)

Everett argues that the medical proof Chibbaro offers does not support a finding that she experienced an allergic reaction to Cipro. Everett argues that, "[w]hile there are notations in

_____

and that there had been an excellent repair of [his] ankle[,]" and that the "medical records and medical request forms" the plaintiff pointed to in the record showing "that he was in pain throughout his incarceration . . . d[id] not constitute verifying medical evidence that the pain he suffered was caused by inadequate medical treatment and not simply from the injury itself." *Id.* at *7. Again, the court determined that the medical proof offered was not adequate, not that medical records cannot constitute verifying medical evidence.

[11]     Elsewhere, Everett describes "inconsistencies in [Chibbaro's] medical records regarding whether she has an actual allergy to Ciprofloxacin or any other quinolones." (Doc. No. 45-1, PageID# 560, ¶ 9).

27

[Chibbaro's] medical chart that she is allergic to 'Quinolones', the purported 'allergy' experienced by [Chibbaro] was joint pain. Joint pain is simply a side effect of the medication and is not an allergic reaction to the medication." (Doc. No. 46, PageID# 607.) Everett states that "[a]naphylactic reactions to Cipro would include throat closure and hives." (*Id.*) In response, Chibbaro offers records documenting that she experienced joint pain, swelling, and muscle pain after taking the Cipro that Everett prescribed her. (Doc. Nos. 62-1, 62-8.) She also provides Bigham's treatment notes stating that Chibbaro "had a Quinolone reaction" after taking Cipro. (Doc. No. 62-8, PageID# 1235.)

Everett also argues that Chibbaro cannot satisfy the objective component of her deliberate indifference claim because medical records from "October 9, 2019, show that the joint pain [Chibbaro] was experiencing was from overuse and a remote injury." (Doc. No. 46, PageID# 608.) In support of this argument, Everett points to one page of a progress record signed by Janet Pelmore, MD, on October 9, 2019. (Doc. No. 44-1.) That page contains treatment notes that are "continued" from a previous page that Everett did not include. (*Id.* at PageID# 539.) Chibbaro, however, filed both pages of Pelmore's treatment notes. (Doc. No. 62-8.) The complete progress record documents that Chibbaro saw Pelmore for a sick call on October 9, 2019, complaining about "pain and 'locking up' of [her] left index finger . . . ." (*Id.* at PageID# 1240.) Pelmore noted that Chibbaro reported "hand pain" including "joint pain and 'locking' which [Chibbaro] sa[id] [was] due to Cipro taken during [August 2019]." (*Id.* at PageID# 1241; Doc. No. 44-1, PageID# 539.) She also noted that Chibbaro reported pain in her "entire [left upper extremity] . . . later during [the] exam." (Doc. No. 62-8, PageID# 1240.) Pelmore noted that Chibbaro's "symptom[s] suggest[ed]" they were "likely" due to "overuse and possibly remote injury[,]" but she ordered lab

tests including a "RAST for quinolones[.]"[12] (Doc. No. 44-1, PageID# 539; Doc. No. 62-8, PageID# 1241.) Pelmore wrote that she would follow up in "[three] weeks to discuss [the] results[.]" (Doc. No. 44-1, PageID# 539; Doc. No. 62-8, PageID# 1241.) Neither party has pointed the Court to record evidence of the test results, but the record shows that Pelmore saw Chibbaro again on November 4, 2019, and wrote that "Dr. Bigham already went over [Chibbaro's] labs[.]" (Doc. No. 62-8, PageID# 1243.) Treatment notes in Chibbaro's medical file dated October 22, 2019, and signed by Bigham appear to state "[l]abs updated [with] [no] new finding." (*Id.* at PageID# 1242.) The summary judgment record contains few medical records dated after this, but one later entry states that Chibbaro is allergic to "Quinolone drugs" and "Cipro[.]" (Doc. No. 62-1, PageID# 758.)

Construing this evidence in the light most favorable to Chibbaro, there remain genuine issues of material fact as to whether Chibbaro is allergic to quinolones and whether Chibbaro experienced a sufficiently severe allergic reaction after taking the Cipro Everett prescribed to satisfy the objective component of a deliberate indifference claim. *See Estelle*, 429 U.S. at 104 & n.10 (citing *Thomas*, 493 F.2d at 158); *Spann*, 2020 WL 8020457, at *2; *cf. Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005) (holding that prisoners who are allergic to tobacco smoke or who can attribute serious medical conditions to tobacco smoke "ha[ve] a medical condition which is sufficiently serious to satisfy the objective component of the [deliberate indifference] test" (quoting *Steading v. Thompson*, 941 F.2d 498, 500 (7th Cir. 1991))).

---

[12]     "RAST" is an abbreviation of "radioallergosorbent test," which is a blood test used to detect a patient's "allergy to specified substances." 2 Dan J. Tennenhouse, *Attorneys Medical Deskbook* § 19:31 (4th ed. updated Oct. 2021).

### 2. Everett's State of Mind

Everett argues that there is no evidence in the record from which a reasonable jury could conclude that Everett had a state of mind "'equivalent to criminal recklessness'" in treating Chibbaro or that she provided "'[m]edical care which is so cursory as to amount to no treatment at all.'" (Doc. No. 46, PageID# 608, 610 (first quoting *Santiago*, 734 F.3d at 591; and then quoting *Lyons v. Brandly*, 430 F. App'x 377, 380 (6th Cir. 2011).) Everett states that she was not aware of Chibbaro's quinolone allergy when she prescribed Cipro, that she provided more than cursory care to Chibbaro, and that she "used reasonable and independent medical judgment in prescribing medication to [Chibbaro]." (*Id.* at PageID# 612.) Everett argues that the record evidence "at most . . . establish[es] that [Chibbaro] received medical treatment and that she disagrees with the treatment decisions of her providers." (*Id.*)

Everett first argues that the record shows she did not know about Chibbaro's quinolone allergy on August 14, 2019, because she relied on Sullivan's chart notation from two days earlier that Chibbaro had no known drug allergies. (*Id.* at PageID# 610–11.) Everett states by affidavit that she "was unaware that [Chibbaro] claimed to be allergic to 'quinolones[ ]'" and that Chibbaro "never informed [her] that she was allergic to the class of drugs known as 'quinolones' or specifically the drug Ciprofloxacin on August 14, 2019."[13] (Doc. No. 45-1, PageID# 561, ¶¶ 12, 14.) Chibbaro states by affidavit that, "[o]n August 14, 2019, [Everett] asked [her] if [she] had any allergies and [she] told [Everett] [she] was unable to take Quinolones." (Doc. No. 62-1, PageID# 730, ¶ 8.)

Everett and Chibbaro thus provide "she-said/she-said" conflicting accounts of whether Chibbaro told Everett on August 14, 2019, that she was allergic to quinolones. But courts ruling

---

[13]     Everett has not argued that she was unaware that Cipro was a quinolone.

on summary judgment motions may not conduct a "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"" *Anderson*, 477 U.S. at 255. The Court "could resolve this dispute only by deciding to believe [Everett's] affidavit rather than [Chibbaro's] affidavit[ ], and such a credibility determination is inappropriate in ruling on a motion for summary judgment." *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990); *see also Green v. Miller*, No. 13–CV–14247, 2014 WL 1846063, at *5 (E.D. Mich. May 8, 2014) ("Where, as here, a motion for summary judgment essentially involves a credibility contest between the parties' versions of events as set forth in their affidavits, summary judgment is not appropriate[.]").

Chibbaro also cites other record evidence that creates a genuine issue of material fact as to Everett's knowledge of Chibbaro's quinolone allergy. Chibbaro identifies several physician's orders records dated prior to August 14, 2019, which state that Chibbaro's drug allergies include quinolones and include multiple entries signed by Everett. (Doc. No. 62-8, PageID# 1250, 1251, 1253–57.) Chibbaro also points to Everett's statement that, on August 14, 2019, she reviewed Chibbaro's record and "saw that [Chibbaro] had received Bactrim, minocycline, and amoxicillin to treat other symptoms."[14] (Doc. No. 45-1, PageID# 559, ¶ 7.) Chibbaro argues that, "[i]f [ ] Everett had thoroughly 'reviewed' [Chibbaro]'s chart to see where other medications had been prescribed[,] she would have seen where [Chibbaro] had informed medical staff on multiple occasions she has an 'allergy' to Quinolones[.]" (Doc. No. 60, PageID# 703 (citing Doc. No. 45-1, PageID# 559, ¶ 7).) Everett does not specify which records of Chibbaro's earlier Bactrim,

---

[14]     Everett offers this statement to argue that she was required to prescribe Cipro because Chibbaro had already been prescribed the other antibiotics. (Doc. No. 46.)

minocycline, and amoxicillin prescriptions she reviewed;[15] Chibbaro has identified several such records that also indicate that Chibbaro is allergic to quinolones. (Doc. No. 62-7, PageID# 1192–94, 1206–08; Doc. No. 62-8, PageID# 1246.)

These questions of fact are material to Chibbaro's claim because a medical provider's knowing prescription of a medication to which an incarcerated patient is allergic can constitute reckless disregard for an excessive risk of serious harm and, thus, a sufficiently culpable state of mind to support an Eighth Amendment deliberate indifference claim. *See, e.g.*, *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 682 (6th Cir. 2013) ("One way a prison official can act with deliberate indifference is by 'consciously exposing the patient to an excessive risk of serious harm' while providing medical treatment." (quoting *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001))); *Farmer*, 511 U.S. at 842–43 (holding that, "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of" harm was "'well-documented[ ] or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk'"); *Talal*, 403 F.3d at 427–28 (holding that inmate who was allergic to tobacco smoke adequately alleged that prison personnel knowingly disregarded substantial risk of harm to his health by smoking and allowing others to smoke around him).

Everett relies on the Sixth Circuit's opinion in *Briggs v. Burke*, No. 15-2282, 2016 U.S. App. LEXIS 23600 (6th Cir. July 29, 2016), to argue that Chibbaro cannot show that her actions amounted to more than negligence. In that case, the Sixth Circuit affirmed the district court's grant

---

[15]     Everett has filed "medication administration record[s]" showing prescriptions for Bactrim, Amoxicillin, and "Minocin" among other medications (Doc. No. 51-1), but Everett has not stated that these were the medical records she reviewed on August 14, 2019.

of summary judgment to Burke, a doctor at the prison where Briggs was housed. *Id.* Burke prescribed the antibiotic Bactrim to Briggs in advance of a scheduled surgical procedure. *Briggs*, 2016 U.S. App. LEXIS 23600, at *6.

> Briggs alleged that he told Burke at the time that he was "allergic" to Bactrim, that she inquired as to the type of allergy, and that he told her that he would suffer "a very bad reaction to his penis." Bactrim also was listed under "Allergies" on documents in Briggs's medical record, including documents generated by Burke. Burke nevertheless prescribed Briggs Bactrim. . . . Briggs further alleged that, upon taking the pill, his penis "immediately started tingling, swelling, and the skin started to peel." The next day, a doctor performed the abscess procedure. The medical record reveal[ed] that Briggs told the doctor that Bactrim exacerbated his herpes the day after it was prescribed. The doctor stopped Briggs's Bactrim prescription and provided him with medication for his herpes.

*Id.* at *6–7.

Although *Briggs* may provide a factual analog to the extent that it involves a deliberate indifference claim based on the prescription of a known allergen to a person in custody, the evidence supporting the Sixth Circuit's conclusion regarding Burke's state of mind is materially different from the evidence here. Specifically, the Sixth Circuit relied on an affidavit from Burke "attesting that, in her medical opinion, the injury that Briggs claimed [when describing his allergy to her] was not indicative of an allergic reaction to an antibiotic medication because such reactions are not localized." *Id.* at *8. The court found, based on her affidavit, that "Burke therefore determined that there was no substantial risk of an allergic reaction in prescribing the medicine, let alone that this risk outweighed the antibiotic benefits of treating Briggs's abscess." *Briggs*, 2016 U.S. App. LEXIS 23600, at *8. The court thus construed Briggs's claim as challenging the adequacy of Burke's treatment and concluded that Briggs had failed to show an issue of fact as to the subjective component of his deliberate indifference claim because, "[a]t worst, Burke acted negligently by not inquiring as to Briggs's herpes, which is not a constitutional violation." *Id.* at *9.

Everett's affidavit does not create a similar record here. Everett attests that Chibbaro did not disclose her quinolone allergy and that she had no other reason to know about it, not that she considered Chibbaro's quinolone allergy among other relevant factors and determined that prescribing Cipro presented no risk of substantial harm or was otherwise appropriate. (Doc. No. 45-1.) Chibbaro provides conflicting affidavit testimony that she told Everett about her allergy and points to other evidence creating an issue of fact as to Everett's knowledge. *Briggs* does not bind the Court to a particular conclusion on this record.[16]

Everett also argues that Chibbaro cannot establish that she had a sufficiently culpable state of mind in refusing to treat Chibbaro on September 4 or 18, 2019, because Everett "did in fact evaluate [Chibbaro's] pain on September 4, 2019, and the only reason [she] did not see [Chibbaro] again was due to [Chibbaro's] aggressive nature and [ ] Everett's fear for her own safety." (Doc.

---

[16]     Everett's also relies on *Lyons v. Brandly*, 430 F. App'x 377 (6th Cir. 2011), *Boles v. Rogers*, No. 19-1310, 2020 U.S. App. LEXIS 985 (6th Cir. Jan. 10, 2020), and *Stewart v. Campbell*, No. 2:17-cv-192, 2019 WL 1233635 (E.D. Tenn. Mar. 15, 2019). (Doc. No. 46.) The plaintiff in *Lyons* alleged "that medical omissions and mistreatment" caused his "easily treatable" condition to deteriorate. 430 F. App'x at 378. The Sixth Circuit reiterated that "[m]edical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference[,]" but found that the care the defendant prison medical personnel provided to the plaintiff in that case—including "routinely examin[ing] [him], administer[ing] antibiotics to treat his infections, provid[ing] [him] with catheterization supplies and aid[ing] him in catheterization procedures, consult[ing] with private physicians, and approv[ing] four major surgeries and numerous surgical procedures"—was "far from cursory." *Id.* at 380–81 (first alteration in original) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)). In *Boles*, the Sixth Circuit addressed an incarcerated plaintiff's claim that he was not receiving prescribed low-sodium meals and held that the plaintiff had not alleged that the defendants knew the meals they provided him were not low sodium. 2020 U.S. App. LEXIS 985, at *7. In *Stewart*, a district court addressed an allegation that prison medical personnel accidentally switched the plaintiff's medication with his cellmate's medication in screening the complaint under the Prison Litigation Reform Act. 2019 WL 1233635, at *3. The court found that the plaintiff made "no factual allegations tending to show that Defendant [acted] intentionally or with criminal recklessness" or with knowledge of a serious risk of harm and that the plaintiff alleged "no more than an assertion of medical negligence." *Id.* The factual settings and claims made in these cases are not sufficiently analogous to be persuasive here.

No. 46, PageID# 610.) Everett states that she evaluated Chibbaro on September 4th (Doc. No. 45-1), but it is undisputed that she did not provide Chibbaro with any treatment on that date. Everett also states that, "[a]fter this visit, [she] . . . asked someone else to evaluate [Chibbaro]" because she "was concerned for [her] safety . . . ." (*Id.* at PageID# 561, ¶ 11.)

Chibbaro offers evidence to show that Everett knew Chibbaro was suffering from a reaction to Cipro on both dates and refused to treat her for that reaction. Chibbaro states that she told Everett on September 4th that she was experiencing joint and tendon pain because of the Cipro. (Doc. No. 62-1.) Everett has not disputed this assertion and the provided medical records support it. (Doc. Nos. 44-1, 62-8.) Chibbaro also points to record evidence that, on September 4, Everett crossed out "NKDA" in the drug allergies field of a physician's order form in Chibbaro's medical record and wrote "Quinolones." (Doc. No. 62-8, PageID# 1228.) Everett's own treatment notes following the September 4th appointment state that she "then changed" Chibbaro's "allergy" notation "to Quinolones." (Doc. No. 44-1, PageID# 540; Doc. No. 62-8, PageID# 1239.) Chibbaro further asserts that she was told she was scheduled for an appointment with Everett on September 18, 2019, but the appointment did not take place. (Doc. No. 62-1.) Everett has not disputed this, and her statement that she "asked someone else to evaluate" Chibbaro after the September 4, 2019 appointment supports a finding that Everett was scheduled to evaluate Chibbaro again after that appointment but refused to do so. (Doc. No. 45-1, PageID# 561, ¶ 11.) Construed in the light most favorable to Chibbaro, this evidence creates a question of fact that Everett knew Chibbaro was experiencing a quinolone reaction on September 4 and September 18, 2019, and refused to treat her for that reaction.

The record contains "evidence on which a jury could reasonably find" for Chibbaro that creates genuine issues of material fact as to the objective and subjective components of Chibbaro's

Eighth Amendment deliberate indifference claim. *Anderson*, 477 U.S. at 252. Everett has not carried her burden to show that she is entitled to judgment as a matter of law. Her motion for summary judgment must be denied.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Everett's motion for summary judgment (Doc. No. 45) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 22nd day of August, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge